UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUGENE HAYES,

                                        Plaintiff,
                                                           CIVIL CASE NO. 05-40099

v.

INLAND LAKES MANAGEMENT, INC.,              HONORABLE PAUL V. GADOLA
                                                           U.S. DISTRICT COURT
                                        Defendant.
_____/

## ORDER GRANTING, IN PART, DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Eugene Hayes filed a complaint against Defendant Inland Lakes Management, Inc.,

on March 24, 2005, claiming restitution for impairment of future wage earning capacity and for past

lost wages in excess of $75,000, combined. On January 3, 2006, Defendant filed a motion for partial

summary judgment with respect to Plaintiff's claims for compensatory damages for loss of future

wage earning capacity. Plaintiff filed a response to Defendant's motion on January 23, 2006, and

Defendant filed a reply on January 30, 2006.

## I.      BACKGROUND

Plaintiff Hayes was employed by Defendant Inland Lakes Management, Inc. as a seaman for

several decades. On June 14, 2004, while working aboard the J.A.W. Iglehart ("Iglehart"),

Plaintiff's feet were scalded after a ball valve on a steam hose accidentally opened and sprayed his

feet with super-heated steam. Plaintiff suffered severe second-degree burns to both feet. On June

30, 2004, Plaintiff began receiving treatment for his burns from his family physician, Dr. Richard

Willis. During this treatment period, the doctor determined that Plaintiff was medically unfit for

employment.  As a result, Plaintiff received weekly benefits equal to forty hours of wages at his standard hourly rate, receiving a total of $35,463 for the period in question.

Just over seven months after the accident, on January 26, 2005, Dr. Willis cleared Plaintiff to return to full-duty work without restrictions.  Dr. Willis also determined that Plaintiff was unrestricted with respect to daily activities.  Plaintiff claims that he originally intended to return to work after he was cleared to do so by his doctor.  Instead, once the doctor cleared him to return, he chose to retire from work aboard the Iglehart.  Plaintiff contends his decision to retire was a result of the shooting pain in his left foot that occasionally caused him to lose his balance.  Plaintiff believed that, given the relatively unstable condition of his foot, returning to work on a ship would subject him to the possibility that he would sustain further injury.

In his deposition, Dr. Willis indicated that Plaintiff first mentioned the shooting pain on the top of his left foot when Plaintiff visited his office on October 26, 2005, ten months after he was fully cleared to return to work and just two days before the doctor's deposition.  Dr. Willis considered whether the pain might have been an early indication of possible nerve damage in the form of reflex sympathetic dystrophy ("RSD").  However, at his deposition, Dr. Willis indicated that Plaintiff did not have "a full-blown syndrome like that" and that a diagnosis of RSD would be "out of [his] area of expertise."  Pl.'s Resp. to Def.'s Mot. for Summary Judgment, Ex. B, Dep. of Dr. Willis Tr., p. 14.  In the opinion of Dr. Willis, no future treatment or care were needed for these burns nor were any restrictions necessary with respect to Plaintiff's medical clearance to return to full-duty work and resume daily activities.  After noting the shooting pains in Plaintiff's left foot, Dr. Willis indicated that even pending a future diagnosis of RSD, Plaintiff had been cleared for full

duty work since January 26, 2005.  Dr. Willis stated that the pains Plaintiff indicated on October 26, 2005 did not change his release of Plaintiff for fully duty work and unrestricted daily activities.

## II.    LEGAL STANDARD

Defendant has filed a motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(c).  Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party.  *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).  The Court is not required or permitted, however, to judge the evidence or make findings of fact.  *Id.* at 1435-36.  The moving party has the burden of showing conclusively that no genuine issue of material fact exists.  *Id.* at 1435.  A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III.    ANALYSIS

### A.    Plaintiff's Claim for Loss of Future Earning Capacity

A claim for loss of future earning capacity under the Jones Act, 46 U.S.C. § 688, requires that the plaintiff "must establish the reduction, if any, in his earning capacity proximately resulting from the injury by showing the existence of some condition which demonstrably limits his opportunities for gainful activity." *Petition of United States Steel Corp. v. Lamp*, 436 F.2d 1256, 1270 (6th Cir. 1970) (citing *Wiles v. New York, Chicago, and St. Louis R.R. Co.*, 282 F.2d 328, 332 (3d Cir. 1960)).  A plaintiff must "present evidence of 'probable' impairment of future earning capacity." *Taylor v. Consol. Rail Corp.*, 1997 WL 321142, *3 (6th Cir. July 11, 1997).  "The critical question is whether plaintiff has 'produced competent evidence suggesting that his injuries have narrowed the range of economic opportunities available to him'." *Gleason v. Am. S.S.  Co.*, 1996 A.M.C. 2861, 2863 (E.D. Mich. May 3, 1996)  (quoting *Gorniak v. Nat'l R.R. Passenger Corp.*, 889 F.2d 481, 484 (3d Cir. 1989)).

> This means that a plaintiff need not, as a prerequisite to recovery, prove that in the near future he will earn less money than he would have but for his injury.  Rather, a plaintiff must show that his injury has caused a diminution in his ability to earn a living.  Such a diminution includes a decreased ability to weather adverse economic circumstances, such as discharge, or lay -off, or to voluntarily leave the defendant employer for other employment.

*Gleason*, 1996 A.M.C. at 2863.

Defendant argues that Plaintiff has failed to present any evidence to support a claim that his future wage earning capacity has been diminished.  Plaintiff claims that whether he has sustained a loss in future wage earning capacity is a genuine issue of material fact.  Plaintiff claims he had no

5

intention of retiring after the accident until he found himself unable to safely and adequately return to his previous job due to the alleged shooting pain in his left foot.  Plaintiff further argues that there is a possibility that he is developing RSD which would further impair his ability to return to work.

Plaintiff cites *Wiles v. New York, Chicago, and St. Louis R.R. Co.*, 282 F.2d 328 (3d Cir. 1960), in support of his position.  In *Wiles*, the plaintiff suffered a serious back injury while acting within the scope of his employment as a railroad worker.  *Id.* at 330.  The court awarded the plaintiff loss of future earning capacity damages because there was evidence that the injury would have lasting effects that could impact his future earning capacity.  *Id.* at 332.  Plaintiff argues that *Wiles* supports his position because Plaintiff may develop RSD or similar nerve damage, giving him a physical impairment that limits the economic opportunities available to him.

Plaintiff also cites *Gorniak v. Nat'l R.R. Passenger Corp.*, 889 F.2d 481 (3d Cir. 1989).  In *Gorniak*, the plaintiff was seriously injured while acting within the scope of his employment as a railroad worker.  *Id.* at 482.  The court allowed plaintiff to collect damages for loss of future earning capacity because the plaintiff presented expert testimony that he was subject to permanent physical restrictions that would preclude him from working in his former position or in many other non-railroad positions.  *Id.* at 484.  The court also recognized that the plaintiff faced the possibility of being "bumped" out of his new (post-accident) position with the railroad company based on the company's seniority system.  *Id.*  Plaintiff argues that *Gorniak* stands for the proposition that there only needs to be a possibility that an injured worker's economic opportunities will be limited for the worker to recover loss of future earning capacity damages.   Plaintiff concludes that because there is a possibility that he will develop RSD, he has stated a viable claim under *Gorniak*.

Finally, Plaintiff cites *Wilburn v. Maritrans GP, Inc.*, 139 F.3d 350 (3d Cir. 1998), for the rule that a "plaintiff can make a claim for loss of future earning capacity if, as a result of a defendant's negligence, it can be reasonably shown that the plaintiff's state of mind has changed concerning his ability to perform his employment duties or procure future employment positions." Pl.'s Resp. to Def.'s Mot. for Summary Judgment, p. 9.  In *Wilburn*, the plaintiff injured his left shoulder while working as a tankerman; he returned to this position after recovering from his injury, but with an impaired left arm and a fear of sailing out of sight of land. *Wilburn*, 139 F.3d at 362. Because the fear of sailing coastwise limited the plaintiff's opportunity to gain a captainship, the court allowed the plaintiff to recover for loss of future earning capacity. *Id.* at 366.  Plaintiff claims that he has stated a viable claim under *Wilburn* because he has undergone a changed state of mind about carrying out his employment duties, and that it is this claimed changed state of mind that caused him to retire.

Plaintiff's selective reading of these cases is not persuasive to this Court and will not allow Plaintiff to survive Defendant's motion for summary judgment.  In each of the cases Plaintiff relies on, the party seeking relief presented competent and reliable medical testimony that he suffered a current, diagnosable injury that left him impaired with respect to future earning capacity. *See Wiles*, 282 F.2d at 331  ("[A]n expert medical witness, testifying on behalf of Wiles, stated that he would have difficulty in getting a job in heavy industry elsewhere . . . ."); *Gorniak*, 889 F.2d at 484 ("Expert testimony indicated that Gorniak was subject to permanent physical restrictions, restrictions that would preclude him" from performing many jobs.); and *Wilburn*, 139 F.3d at 362-63 ("Dr. Steven Newman testified that Wilburn has permanent injury to his left shoulder resulting in mobility

and functional limitations in both his shoulder and arm. . . . Dr. Robert Sadoff, a forensic psychiatrist, testified that Wilburn suffers from post-traumatic stress syndrome," which limited his ability to sail out of the sight of land and which, without treatment, would greatly limit Wilburn's ability to obtain a captainship.). In the instant case, Plaintiff has failed to make any similar showing of a current diagnosable injury that limits his future earning capacity. The sum of Plaintiff's evidence indicates that he regularly saw one doctor, his long-time family doctor, Dr. Willis, for all of his treatment. After numerous visits to Dr. Willis, on January 26, 2006, the doctor released him to return to work without restrictions. Dr. Willis further testified that Plaintiff's daily activities were also unrestricted.. The doctor cited absolutely no limitations on any activities that Plaintiff wished to undertake. Furthermore, Plaintiff's complaint of moderate pain in his left foot in the form of shooting pains, revealed two days before Dr. Willis' deposition, was not sufficient to compel Dr. Willis to change his diagnosis, refer Plaintiff for other treatment, or place any restrictions on Plaintiff's daily or work-related activities. Plaintiff's sole complaint about his foot, in the face of his own doctor's testimony that he has no injury which limits his ability with respect to work or daily activities, is insufficient evidence for a jury to find for Plaintiff.

B. Plaintiff's Claim for Past Wage Loss

Defendant's motion for summary judgment also seeks a "dollar for dollar credit for the $35,463 actually paid to Mr. Hayes during the time he was not fit for duty." Def.'s Br. in Support of Mot. for Summary Judgment, p. 7. Because the relief Defendant seeks is not properly presented within a motion for summary judgment, the Court shall not consider the merits of Defendant's claim with respect to past wage loss.

## IV.     CONCLUSION

"The critical question is whether plaintiff has 'produced competent evidence suggesting that his injuries have narrowed the range of economic opportunities available to him'." *Gleason*, 1996 A.M.C. at 2863 (quoting *Gorniak*, 889 F.2d at 484).  In the instant case, examining the facts in a light most favorable to the non-moving Plaintiff, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact with respect to whether he has suffered an injury that has narrowed the economic opportunities available to him.  He has not presented sufficient evidence, significantly probative with respect to the issue of a diminution of his loss of future earning capacity, for a jury to return a verdict in his favor. Consequently, summary judgment in favor of Defendant is appropriate.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's motion for partial summary judgment [docket entry 15] with respect to Plaintiff's claim for loss of future earning capacity is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's request for a credit for the amount paid to Plaintiff for past wage loss is **DENIED**.

**SO ORDERED.**

Dated:   September 13, 2006                         s/Paul V. Gadola
                                                    HONORABLE PAUL V. GADOLA
                                                    UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on   September 14, 2006   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
          Cheryl A. Cameron; George T. Fishback; Brian J. Miles                   , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                              .


s/Ruth A. Brissaud
Ruth A. Brissaud, Case Manager
(810) 341-7845